## SAXON *et al.* v. BRANTLEY.

No. 8820. MARCH 18, 1932.

*Kirkland & Kirkland,* for plaintiffs in error.
*J. L. Brown,* contra.

GILBERT, J. On December 5, 1931, Brantley instituted against Floy Saxon habeas corpus for the purpose of obtaining custody of his child Troy Ellis Brantley Jr. Petitioner admitted that he "released custody and control" of the child to its maternal grandparents, Mr. and Mrs. P. D. Saxon, but alleged that conditions had changed; that the grandmother was dead; that the grandfather had removed his place of residence from Candler County to Savannah,

and had abandoned the care and custody of the child to the respondent, an aunt of the child, living in Candler County; that she and her associates are not proper persons to train the child, that they use profane and vulgar language in his presence, and without provocation beat it in such manner as to endanger its life. The respondent denied the charges that she was not a proper person to care for the child, of improper conduct on her part, and mistreatment of the child. The grandfather intervened, setting up the contract; denying that he had abandoned the child; asserting that he had properly cared and provided for the child, and that he had no knowledge of any profanity used in the presence of the child or of his having been whipped or spanked. The child was awarded to the father.

■ The Civil Code (1910), § 3021, par. 1, provides: "Until majority, the child remains under the control of the father, who is entitled to his services and the proceeds of his labor. This parental power is lost—1. By voluntary contract, releasing the right to a third person." It is settled that a contract by which parents lose control of a minor child must be "clear, definite, and certain." In this case the contract measures fully up to those requirements. It is in writing; it is clear, definite, and certain. It sets out that the mother is an invalid and is unable to nurse and care for the child. It also sets out that the father is himself unable to give the child the needed attention, on account of its age and on account of his other duties. It also sets out that the grandparents are able financially and otherwise to raise the child by giving it their undivided attention, care, and suitable education; and further sets out that since the birth of the child the grandparents have cared for and nursed the child in a parental manner, and that the grandparents, in consequence of what has already been stated, became endeared to it and are able and willing to continue to care for it in a parental manner and to educate it as one of their own children until it shall reach its majority. The contract concludes by stating that in consideration of the premises already stated the parents "hereby agree to relinquish parental control of said minor child to said parties of the second part, and by these presents do relinquish parental control of said child," reserving full right to visit the minor child. The validity of that contract is not questioned, nor is its meaning. On the other hand it is contended that the habeas-

corpus court should restore the child to the petitioning father because of changed conditions. "Where a father relinquishes the custody and control of his minor child to another, the,latter, if a suitable and proper person to have such custody and control, is legally entitled thereto." *Carter* v. *Brett,* 116 *Ga.* 114 (42 S. E. 348). It is neither alleged nor proved that the grandfather is in any manner unsuitable or unfitted to have custody and control of the minor child. Neither is his ability financially to care for the child questioned. It should be remarked that the petition was originally brought against Floy Saxon, the sister of the deceased mother of the child. The grandfather, P. D. Saxon, intervened and is the real defendant. Floy Saxon is merely the unmarried daughter of P. D. Saxon, occupying his home as housekeeper and for him taking care of the child. The evidence shows that she has had some training and experience as a nurse, though not a graduate nurse.

The changed conditions alleged are that the grandmother has died; that the father has again married, his present wife having been at the time of their marriage a widow with three children, and being willing to aid the father in caring for his child; that profane language has been used in the presence of the child by his aunt Floy Saxon, and by some members of the family other than the grandfather, P. D. Saxon. It is also alleged that the child has been unduly punished. There is some evidence, of the most general character, that on a few occasions profane language has been used in the presence of the child. Only in one instance was any specific language related to the court. The evidence failed entirely to show any such physical punishment of the child as would authorize a judgment restoring the custody of the child to the father and a nullification of the contract. As stated above, the ability of the grandfather to care for the child is not questioned. The evidence of the ability of the father shows substantially that he has no property other than $50 worth of personal property, is a small farmer, has a wife and now four children to support, and that he has been unable to remain out of debt. It is contended that conditions have changed also because the grandfather has for the past several years been living in Chatham County. The uncontradicted evidence shows that he has not changed his residence, but that he is employed at Savannah by the Seaboard Air-Line Railway

and in the course of his employment spends from three to five days at a time, sometimes at intervals of one month and sometimes at intervals of two months, at the home; that he earns not less than $112 and not more than $140 per month; that he owns the farm in Candler County where his home is located; and that the land is farmed under his supervision by members of his family.

In writs of habeas corpus sued out on account of detention of the child, the court, on hearing all of the facts, may exercise its discretion as to the person to whom the custody of the child will be given. In *Miller* v. *Wallace,* 76 *Ga.* 479 (2 Am. St. R. 48), this court declared: "The discretion to be exercised in such case is not an arbitrary and unlimited discretion, . . but . . such a discretion as, when applied to a court of justice, means sound discretion, guided by law." See *Sloan* v. *Jones,* 130 *Ga.* 836, 848 (62 S. E. 21), and cit. In *Williams* v. *Crosby,* 118 *Ga.* 296 (45 S. E. 282), this court held: "In a contest between two parties, both of whom are fit and proper persons, the one having the legal right should prevail." *Sloan* v. *Jones,* supra. The evidence is that the father, as well as the grandfather, is a fit and proper person to care for his child, but that the financial ability of the father is more questionable than that of the grandfather. Unless, therefore, the evidence as to the use of profane language, the physical punishment of the child, and the residence of the grandfather in Chatham County is sufficient to authorize the court in the exercise of his legal discretion to award the child to the father, notwithstanding the clear, definite written contract, the award should have favored the grandfather, as being legally entitled to the custody of the child. The death of the grandmother can not in any event afford reason for a judgment which would be tantamount to cancellation of the contract. The custody of the child was given over to both the grandfather and the grandmother. It must have been contemplated that the grandmother would pass away, and that such event might occur before the child became of age. "It is, on the hearing of a writ of habeas corpus, an improper exercise of discretion to render a judgment depriving one legally entitled to the custody of a minor child of the same and awarding such custody to another, when there is undisputed evidence showing the right and fitness of the former to have such custody, and no evidence to the contrary." *Carter* v. *Brett,* supra. The evidence demanded a find-

ing that under the written contract the grandfather was legally entitled to the custody of the child. There is no evidence of substantial weight tending to show that the grandfather is unfitted for such custody or in any way incapable to do what is to the best interest of the child.

*Judgment reversed. All the Justices concur.*