S94A1722, S94X1725, S94X1728, S94X1730, S94X1732.
WELCH et al. v. WELCH et al.; and vice versa.
(453 SE2d 445)

BENHAM, Presiding Justice.

In the 1960's, appellant-plaintiffs were placed into the custody of Mr. and Mrs. Cecil Welch by order of the juvenile court. Although appellants remained in the custody of the Welches until they reached their majority, the Welches never initiated proceedings to adopt appellants formally. When no wills were offered for probate after the Welches died in 1992, appellants filed an action seeking children's shares of the estates based on alleged "virtual adoption." After appellants presented their evidence at a bench trial, the trial court granted appellees' motion for involuntary dismissal. The ground for the dismissal was the trial court's conclusion, as a matter of law, that a contract for adoption must be between the natural parents and the adoptive parents, and that case law did not support the conclusion that the juvenile court was a party competent to enter into such a contract. It is from that dismissal that appellants bring the main appeal. Appellees have filed defensive cross-appeals.

In *O'Neal v. Wilkes*, 263 Ga. 850 (1) (439 SE2d 490) (1994), this court reiterated the principle that a contract for adoption must be between parties competent to contract for the disposition of the child. The question for resolution in this case is whether the juvenile court can, by entry of an order awarding custody, become one of such par-

ties. We conclude that the principles stated in *O'Neal* should not be extended so far as to permit the juvenile court such authority.

Virtual adoption is not a doctrine to be employed broadly, and the facts of this case demonstrate why. Appellants' suit asked the trial court to create a contract out of an order which merely established legal custody and gave approval to the custodians to proceed with statutory adoption proceedings if they chose to do so. The evidence is clear that they did not choose to do so, and while the record is silent as to the reason for that non-action, it is also silent as to the intent of the Welches in taking custody of appellants. The trial court here expressed the opinion that the contract of adoption must be considered oral because only the juvenile court signed the order and the purported adoptive parents had not signed anything memorializing their intent at that time of adopting appellants. The danger of familial ties being created by judicial action such as this in the absence of evidence of such an intent is too great to permit a custody order to have the effect which appellants would have us give it. The Welches are no longer able to speak to their reasons for not following up on the pre-approval given by the juvenile court, and we cannot assume from their silence that they had such an intent to adopt that a court of equity should cause that intent to mature into an accomplished adoption.

While it is true that our former law permitted certain juvenile courts to take custody of children whose parents' parental rights had been terminated, and to act in loco parentis and as guardian of such children,[1] and case law has recognized the authority of such courts to give consent to adoption,[2] that authority should properly be limited to the context in which it arose, statutory adoption. The trial court in the present case was correct in its holding that there was no case law permitting a juvenile court's order to be considered the contract underlying virtual adoption.

The courts have an important role in supervising and regulating the adoption process in this case and should not become mere contractual parties in the process. While it is appropriate in circumstances such as those surrounding the custodial placement of appellants for the juvenile court to give encouragement to custodians to adopt, it is not appropriate for the superior court subsequently to transmute that encouragement into a contract which became binding on one side only after the death of that side. The trial court was correct in ruling that the custody order could not serve as a contract of adoption and in granting appellees' motion for involuntary dismissal.

---

[1] Ga. L. 1951, pp. 291, 304, § 21 (3).
[2] *Criswell v. Jones*, 60 Ga. App. 81 (4) (3 SE2d 115) (1939).

Since that judgment is affirmed, the defensive cross-appeals are moot and must be dismissed.

*Judgment affirmed in Case No. S94A1722. Appeals dismissed in Case Nos. S94X1725, S94X1728, S94X1730, and S94X1732. All the Justices concur, except Sears, Hunstein and Carley, JJ., who dissent.*

SEARS, Justice, dissenting.

For the reasons given by Justice Carley in his dissent, I believe that the trial court's judgment must be reversed even under the rationale of the majority opinion in *O'Neal v. Wilkes*, 263 Ga. 850 (1) (439 SE2d 490) (1994), to which I dissented. I also believe that the judgment in this case should be reversed based on the principles set forth in my dissent in *O'Neal v. Wilkes*, 263 Ga. at 853-856. I therefore respectfully dissent to the majority opinion in the present case.

CARLEY, Justice, dissenting.

Because, in affirming the trial court, the majority unduly restricts the principles of *O'Neal v. Wilkes*, 263 Ga. 850 (1) (439 SE2d 490) (1994) and misconstrues the custody orders, I must respectfully dissent. In my opinion, the trial court erred in granting appellees' motion for involuntary dismissal pursuant to OCGA § 9-11-41 (b).

1. In a virtual adoption case, a contract for adoption must be proven and "[t]he first essential of a contract for adoption is that it be made between persons *competent to contract* for the disposition of the child. [Cits.]" (Emphasis supplied.) *O'Neal v. Wilkes*, supra at 851 (1). Ordinarily, the natural parents will be the ones who are "competent to contract" for the adoption of their child. However, that is not invariably the case. The natural parents may be deceased or, if living, they may have lost their parental rights. Accordingly, in determining whether this element of a virtual adoption case has been proven, the focus must be upon the competency of the party with whom the purported adoptive parents contracted. That party's lack of status as a natural parent of the child is not necessarily dispositive.

At the time that appellants were placed into the custody of the Welches, the applicable former law provided that,

> [w]hen conditions and circumstances warrant *the termination of parental rights*, the [juvenile] court may take custody of the child or children involved for suitable placement or adoption and may act in loco parentis in all matters pertaining to their interests. In such cases the court shall act as guardian of the person and property of the child or children involved.

(Emphasis supplied.) Ga. L. 1951, pp. 291, 304, § 21 (3). Thus, where

parental rights had been terminated, a juvenile court could consent to an adoption "in lieu of the consent of the parent[s]." *Criswell v. Jones*, 60 Ga. App. 81, 82 (4) (3 SE2d 115) (1939). I cannot agree with the majority's position that the authority possessed by the juvenile court at the time of the custody orders was limited to statutory adoption. It is an unwarranted and inordinately fine distinction to hold that a party has authority to consent to an adoption but is not competent to contract for that adoption.

Accordingly, I believe that, under the law applicable at the time of the custody orders involved in this proceeding, it was possible for a child whose natural parents had lost their parental rights to become virtually adopted as a consequence of an adoption agreement between a juvenile court and the purported adoptive parents. I do not hereby advocate an expansion of the existing law of virtual adoption, but, to the contrary, merely recognize and apply the long-standing principle that the party with whom the purported adoptive parents contracted must be one who was competent to contract for the disposition of the child. *O'Neal v. Wilkes*, supra at 851 (1). Under the applicable provisions of former law, a juvenile court would be competent to contract with the Welches for appellants' adoption if the parental rights of their natural parents had been terminated. Therefore, in my opinion, the trial court incorrectly concluded that appellants could not recover on their virtual adoption claims in the absence of a contract between their natural parents and the Welches and, thus, erred in granting appellees' § 41 (b) motion for involuntary dismissal.

2. The majority not only concludes that the juvenile court could not become a party competent to contract for the disposition of appellants, but also questions the existence of any intent to adopt on the part of the Welches.

The trial court found that, if the juvenile court was competent to contract with the Welches for the adoption of appellants, then the language of the custody orders constituted, in a clear, convincing and strong manner, a contract for adoption. In my opinion, this finding is not erroneous. Both custody orders clearly state that appellants were being placed with the Welches *for the purpose of adoption.*

> It is true that, in order to be enforceable under the doctrine of virtual adoption, the contract must *comprehend and intend* a legal adoption according to statute. [Cit.] This, however, is not to say that language clearly having that meaning under the attendant and surrounding circumstances, though not containing precise legal phraseology, would be insufficient.

(Emphasis supplied.) *Toler v. Goodin*, 200 Ga. 527, 539 (4) (37 SE2d

609) (1946). See also *Anderson v. Maddox*, 257 Ga. 478 (360 SE2d 590) (1987). Furthermore, because the Welches accepted and retained custody of appellants pursuant to the custody orders, the absence of any document signed by them is immaterial. *Taylor v. Taylor*, 217 Ga. 20, 22-23 (2) (120 SE2d 874) (1961).

3. The trial court's grant of an involuntary dismissal cannot be affirmed on the ground that appellants failed to prove that the Welches died intestate. The fact that no wills have ever been propounded is sufficient to show that the Welches died intestate and to shift to appellees the burden of coming forward with some evidence to authorize a finding that the Welches had wills.

The judgment of the trial court should be reversed.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED FEBRUARY 13, 1995 —
RECONSIDERATION DENIED MARCH 3, 1995.

*Robert P. McFarland*, for appellants.
*Banks & Stubbs, Robert S. Stubbs III, Lipscomb, Johnson, Ashway & Sleister, Michael R. Sleister, Boling, Rice, Bettis, Bottoms & Bagley, Jeffrey S. Bagley, T. Russell McClelland III*, for appellees.